## MOYSE REAL ESTATE CO. v. FIRST NATIONAL BANK OF COMMERCE.

[70 South. 821.]

1. BILLS AND NOTES. *Corporations. Accommodation notes. Innocent purchaser. Liability. President executing notes. Authority. Presumption.*

Where a corporation is empowered by its charter to execute promissory notes generally, but not to make accommodation paper, it is liable on an accommodation note executed by it to one

purchasing such notes in due course of business for value, without notice.

2. CORPORATIONS. *President executing notes. Authority. Presumption.*

In a suit by a purchaser for value without notice of an accommodation note of a corporation, proof that the president of the corporation executed the note was *prima facie* evidence of his authority to bind the corporation in that manner.

APPEAL from the circuit court of Forest county.

HON. P. B. JOHNSON, Judge.

Suit by the First National Bank of Commerce against the Moyse Real Estate Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Will A. Parsons,* for appellant.

Of course we are well acquainted with the doctrine announced in the cases referred to by appellee upon this proposition of estoppel. We take it that where an officer is authorized by the corporation to execute negotiable paper in the name of the corporation and he does so, then the same rule would apply to that paper as would apply to the paper of an individual and the paper would be good in the hands of a *bona fide* purchaser for value even though it was given without consideration or was voidable in the hands of the original party or parties taking with notice for any other reason. For instance in this case if the evidence had shown that J. L. Moyse had authority to issue negotiable paper in the name of the defendant company then the fact that the paper he issued was *ultra vires* or without consideration or merely accommodation would not be available against the paper in the hands of *bona fide* purchasers for value. But the plaintiff asks this court to go further than that and to hold that the defendant is estopped without any showing that the president was authorized to execute negotiable paper for the corporation at all.

Appellee by its position says: It is true these notes are accommodation papers, *ultra vires,* not executed in the course of the business of the corporation, the corporation got no benefit therefrom and all of that but you must pay them. Why? Because they are made payable to bearer. And they call upon the court to estop the corporation by the act of its president in making these notes payable to bearer without any showing that the president had any authority to execute negotiable papers for the corporation. We submit that, in order to estop the corporation by the act of the president it must be shown that the president was authorized to act either in that particular case or generally or that he was held out to the world as having such authority or that the corporation knowingly received the fruits of the act or knowingly retained the same. In other words the actual authority must be shown or some conduct or custom of business acquiesced in by the board of directors that would make it inequitable for the corporation to deny the authority of the president. This is supported by numerous authorities referred to in my brief.

The power of the president of a corporation to execute negotiable paper is not presumed in cases in which the execution of the paper is denied under oath.

The position assumed by the appellee in its brief is the *contra* of the above statement of the law, but appellee makes no distinction as to whether or not the authority of the president is put in issue in the pleadings. Of course, there is a great deal of difference between attacking the execution of an instrument collaterally or by a plea of general issue and there is a difference also between instruments under seal and those not under seal and the rules of evidence applicable depend a great deal on the condition of the pleadings. For instance in one case referred to by the appellee the case of *Kennedy* v. *Knight,* 94 Am. Dec. 543, the note sued on was not given by the corporation but to the corporation and was transferred by the corporation to a third party who brought suit. The transfer was un-

der seal and the corporation was asserting no claim to the note. There are a great many cases that hold that where an instrument is under the common seal of the corporation that the purpose of the seal is for the authentication of the instrument and that the presence of the seal on the instrument is some proof of authority. There is a line of decisions from the supreme court of Illinois that by the language of the opinions appear to support this contention but the facts of this case are not at all in the line with the facts of any of the cases from that state. For instance in the case of *Lloyd. & Company* v. *Matthews*, largely quoted in appellee's brief, L. R. A. (N. S.), Vol. 7, page 380, at top of page the court says: "But since the guarantee sued on was placed on the note of appellant and the note was discounted—for its benefit and the proceeds thereof were remitted to appellant—the plainest principles of justice require that the company should be held bound by the act of its president without any proof of authority beyond that which must be presumed from the fact that the president, in good faith and in the regular course of corporate business and for the benefit of the corporation, executed the instrument sued on." How different from the case we are now presenting.

Appellee refers to some cases outside of the state of Illinois, which he claims supports his contention. The first of these is the *National Bank of Terre Haute* v. *Vigo County*, decided by the supreme court of the state of Indiana in 40 N. E. 800. We contend that this case does not support his contention. In this case the court says: "The president of a corporation by virtue of his office, merely has very little authority to act for the corporation. His powers depend upon the nature of the company's business and the authority given him by the board of directors may invest him with authority to act as the chief officer of the company. This may be done by resolution or by acquiescence in the course of dealings and manner of transacting the business of the corporation." Referring to *Martin* v. *Webb*, 110 U. S. 7: *Railroad Com-*

*pany* v. *Bastian,* 15 Md. 494; *Dougherty* v. *Hunter,* 54 Pa. St. 380; *Stokes* v. *Bottery Co.,* 49 N. J. Law 240; *Railroad Company* v. *McVeigh,* 98 Ind. 319. It is true that this opinion goes on further down and says:

"Where a contract is made by the president in the name of the corporation, in the usual course of business, which the directors had the power to authorize him to make or to ratify when made, the presumption is that the contract is binding on the corporation, until it is shown that the same was not ratified or authorized." But this principle does not apply in this case as the notes in this case were not executed in the usual course of business. But if it did support the contention of the appellee then it no longer does so for it is squarely overruled by the case of *Elkhart* v. *Turner,* 170 Ind. 455, which is directly on all fours with the case we are now presenting to this court and from which I will take occasion to quote in support of my position a little later in this brief.

The next case referred to by appellee is the case of the *Eureka Iron Works* v. *Bresnahan,* 27 N. W. 524. This case does not support their contention but holds that a mortgage executed by a corporation by the president and secretary with the knowledge of all the directors and stockholders of the corporation assembled together where the mortgage was drafted and executed in their presence is binding upon the corporation. This not only does not support the contention of the appellee but it is decided by the supreme court of Michigan; the supreme court of that state later rendered an opinion in the case of *Gould & Co.,* 134 Michigan 517, in which the court in a case directly in point squarely sustains appellant's contention. *Bacon* v. *Mississippi Fire Insurance Co.,* 31 Miss. 116.

We are also referred to the case of *Paterson* v. *Robinson,* 22 N. E. 372, decided by the supreme court of New York, as sustaining the contention of appellee. This case rested upon a long course of dealings between the parties and does not hold that in a suit upon a promissory note executed by the president in the name of the corporation,

where the authority of the president and the execution of the note is specially denied and put in issue it is only necessary to show that the president is president and signed the note. Of this case the supreme court of Michigan says in the case referred to above (the *Gould* v. *Gould & Company*): "We are cited to the case of *Paterson* v. *Robinson*, 116 New York 193, 22 N. E. 372, in which language is used sustaining the ruling of the circuit judge in the present case, but from the examination we have been able to give the subject, that case would appear to stand alone and for an understanding of the New York Rule should be compared with *Columbia Bank* v. *Gospel Tabernacle Church*, 127 N. Y. 361.

There is no case in New York that I have been able to find that holds that where negotiable paper is executed in the name of the corporation by its president and the execution of the paper and the authority of the president is specially denied that no proof of the authority of the president other than that he was president and signed the note is required to bind the corporation. There are several cases that hold the opposite of this decided by the supreme court of that state. See the cases from New York referred to in my original brief and see also *Bangs* v. *National Macaroni Company*, 15 App. Div. (New York Reports), page 524, decided in 1897; *Beltal* v. *Grand Music Company*, 57 N. Y. Sup. 746; *Life & Insurance Company* v. *Mechanical Fire Insurance Company*, 7 Wendals (New York) 31; *Rockerfellow* v. *Lamarro*, 89 N. Y. Supp. 1; *Peoples Bank of City of New York* v. *Roman Catholic Church N. E.*, 17 S. W. 411.

The case of *Merrill* v. *Hurley*, 6 S. D. does not sustain the position of appellee and not only so but the supreme court of South Dakota in the case of *Des Moines M. & S. Co.* v. *Tilford M. Co. et al.*, 9 S. D. 542, decided sometime later, held that there is no implied power in the president to bind the corporation.

The case of the *American Exchange Bank* v. *Oregon Pottery Co.*, 55 Fed. Rep. 265, is, from appellee's stand-

point, too good to be true. That is too good to be received as sound law, in fact, appellee does not even claim that the pronouncement of this case is sound law. The supreme court of the state of Oregon decided eight years later that the above was not the law.

Appellant's position is also sustained by the following federal authorities: *Potts* v. *Wallace,* 146 U. S. 706; *Commercial & Co. Insurance Company* v. *Union Mutual Insurance Company,* 19 Howard 318-322. The case referred to by appellee in 108 Iowa, 522, if it sustains appellee's position, is overruled by the later case of *Marshal Field & Co.* v. *O. Ruffcorn & Co.,* decided in 1902, 117 Iowa, 159, which holds that where the execution of a note purporting to be that of the corporation signed by its president and incorporated in the complaint is denied under oath, the authority of the president to execute the note must be shown by the plaintiff before recovery can be had.

As to the New York cases referred to they have no application, as I have already shown, to this case we are now presenting.

In support of our position that the authority of the president to execute a note where the execution is denied and his authority put in issue must be proved before recovery can be had and cannot be presumed from the title of his office and his executing the note we refer to the following cases:

New York—*Columbia Bank* v. *Gospel Tabernacle Church,* 127 N. W. 361; *Bangs* v. *National Macaroni Co.,* 15 App. Div. (N. Y.) 524; *Bank of New Port* v. *Snyder Manufacturing Company,* 107 App. Div. (N. Y.) 96; *Rockerfellow* v. *Lamarra,* 89 N. Y. Supp. 1; *Minors & Co. Bank* v. *Ardsley Hall Co.,* 113 N. Y. 194.

W. Virginia.—*Evans* v. *Lumber Company,* 70 West V. 169 (1911); *Thompson* v. *Manufacturing Company,* 60 W. Va. 42 (1907); *National Bank* v. *Manufacturing Company,* 56 W. V. 446 (1905).

Iowa.—*Marshall Field Co.* v. *O. Ruffcorn Co.* 117 Iowa, 157; *Ney* v. *Eastern Iowa Tel. Co.,* 114 N. W. 383; *Groetz* v. *Armstrong,* 115 Iowa, 602; *N. W. Packing Company* v. *Whitney,* 89 Pac. 981; *Alter Placer Mining Co.* v. *Alta Silver Mining Company,* 78 Cal. 629; *Fontana et al.* v. *Pacific Can. Co.,* 61 Pac. 580; *Bliss* v. *Canal Co.,* 65 Cal. 502.

Texas—*Dreiben* v. *First National Bank,* 99 S. W. 850; *Gulf Grocery Co.* v. *Crews,* 146 S. W. 654.

Indiana—*Cushman* v. *Cloverdale Coal and Mining Co.,* 84 N. E. 579; *Elkhart Hydraulic Co.* v. *Turner,* 170 Ind. 455.

Ohio—*Bradford Belting Co.* v. *Gibson,* 67 N. E. 888.

Montana—*Helena National Bank* v. *Rocky Mountain Tel. Co.,* 20 Mont. 329.

Oregon—*Crawford* v. *Albany Ice Company,* 36 Ore. 535; *Sears* v. *Daly,* 43 Ore. 346.

Pennsylvania—*Worthington* v. *Schuylkill Electric R. W. Co.,* 195 Pa. St. 211; *Monogahela National Bank* v. *Harmony Land Co.,* 75 Atl. 687.

Michigan—*Gould* v. *Gould & Co.,* 134 Mich. 515, decided in 1903; *McClellang* v. *Detroit & C. Works,* 56 Mich. 579.

Vermont—*Lyndon Mill Co.* v. *Lyndon L. & B. Institute,* 63 Vt. 581.

Massachusetts—*Murray* v. *C. N. Neilson Lumber Company,* 9 N. E. 634. This was a suit on an agreement in writing to pay a salary for services rendered. Held, President had no authority to make it.

New Hampshire—*Wait* v. *Armory Association,* 14 L. R. A. 356.

Louisiana—*Taylor* v. *Vosburg Min. Springs Co.,* 54 So. 912.

Arkansas—*City E. Street R. R. Co.* v. *National Exchange Bank,* 62 Ark. 33.

Kentucky—*Roeder* v. *Lewis and Mason T. R. R. Co.,* 7 Ky. Law 363; *Turnpike Co.* v. *Looney,* 71 Dec. 491.

In Mississippi in the case of *Bacon* v. *Mississippi Insurance Company*, 31 Miss. 118, our supreme court said: "Again if the corporation had power to execute the note it must have done so by the president under the authority shown to have been given him by the board of directors..

*Sullivan, Conner & Sullivan,* for appellee.

The proof is not contradicted and is conclusive that the name of the Moyse Real Estate Company was signed to these notes by J. L. Moyse, president, and the proof is equally conclusive that the company took the mortgage as security for signing the notes. In view of this fact, all other questions raised by defendant in this record become wholly immaterial and should not call for discussion.

The proof in this cause shows that J. L. Moyse, President of the corporation, was in full charge of the offices of the company, and was the only person who appeared to have any authority to act for the company. He negotiated at considerable length and at different times with the other representatives of the bank about these notes. The corporation also, by him as president, had executed another note about another matter which the bank had bought and which the corporation paid. The evidence shows that J. L. Moyse, by his acts and conduct, was the real representative of the corporation, and it is bound by what he did and especially is this true as to innocent purchasers of notes, executed by him in the corporated name.

POWER TO EXECUTE PROMISSORY NOTES AND RIGHTS OF BONA FIDE PURCHASERS.

The charter of the corporation is very broad and all the authority to conduct the business described in the charter is given that a natural person could have. In fact the power is granted in the charter "to do any and all of the business above mentioned and set forth to the same extent as natural persons might or could do."

The power to execute negotiable promissory notes by the company necessarily flows from this charter. The corporation by its president did issue the notes sued on and made them payable to bearer, and the First National Bank of Commerce bought them before maturity, for value, without notice. The corporation cannot defend as against the innocent purchaser of its notes which it put on the market and which are regular on their face. We cite the following authorities: Joyce on Defenses to Commercial Paper, section 85; *Monument National Bank* v. *Globe Works*, 101 Mass. 57; 3 American Report, 322; 3 Thompson on Corporations (2 Ed.), sec. 2185.

POWER TO BORROW MONEY AND MAKE NEGOTIABLE PAPER.

"If the execution of negotiable paper is obviously foreign to the purpose of the corporation all persons are chargeable with notice of the *ultra vires* character of such paper. But the business of the corporation is such that it may, under some conditions, have occasion to execute such paper, and it in fact executes it for a purpose foreign to its purposes, as in payment for property which it had no authority to purchase, the paper is binding in the hands of a *bona fide* holder for value without notice. The distinction is between a total want of power and an irregular exercise of an unauthorized power." Eliot on Private Corporations, section 182, last paragraph.

CORPORATION BOUND BY ACCOMMODATION PAPER IN HANDS OF INNOCENT PURCHASER.

"A partner has no right to make accomodation paper in the firm name but the fact that the paper was so made without authority is no defense against a *bona fide* purchaser. Neither is it a defense against a *bona fide* purchaser that paper executed by a corporation was accommodation paper, and *ultra vires*." Norton on Bills and Notes, pages 182 and 183.

Method of executing negotiable instruments.—2 Thompson on Corporations (2 Ed.), section 1890.

ACCOMMODATION PAPER VALID IN HANDS OF INNOCENT PURCHASER.

"Thompson on Corporations, section 2228; Norton on Bills and Notes, page 183. See *Johnson* v. *Johnson Bros.,* (note) Ann. Cas., 1913 A. page 1314.

"A *bona fide* purchaser of a negotiable promissory note which is void between the parties because given in violation of law, is not affected by the invalidity of the note." See *Arnd* v. *S. J. Oblom,* Ann. Cas. Vol. 11, page 1179. See *Union Trust Co.* v. *Preston National Bank,* 4 Ann. Cas. 347. *Citizens State Bank* v. *Nore,* 2 Ann. Cas. 604.

DISTINCTION IN WANT OF POWER TO EXECUTE NEGOTIABLE INSTRUMENTS AND IRREGULARITIES IN ITS EXERCISE. 3 Thompson on Corporations (2 Ed.), section 2190.

WHERE GENERAL POWER TO ISSUE NEGOTIABLE INSTRUMENTS EXISTED, THE CORPORATION IS LIABLE FOR UNAUTHORIZED NEGOTIABLE PAPER IN THE HANDS OF INNOCENT PURCHASER. 3 Thompson on Corporations, section 2190.

POWER OF THE PRESIDENT TO EXECUTE PROMISSORY NOTES IS PRESUMED IN THE ABSENCE OF PROOF TO THE CONTRARY BY THE CORPORATION.

*Anderson* v. *South Chicago Brewing Co.,* 50 N. E. 654;
*Anderson Transfer Co.* v. *Fuller,* 51 N. E. 253;
*Bank of Minneapolis* v. *Griffin,* 48 N. E. 154;
*National State Bank of Terre Haute* v. *Vigo County National Bank et al,* 40 N. E. 800; *Eureka Iron Works* v. *Bresnahan,* 72 N. W. 524.

See 2 Thompson on Corporations, (2 Ed.), section 1452, and cases cited in notes, especially cases from New York. See, also, Elliott on Corporations (3 Ed.), Par. 495, p. 538; *George E. Lloyd & Co.* v. *Nelson Edward Matthews, et al,* 7 L. R. A. (N. S.), 376.

In the case of *Kennedy* v. *Knight,* 94 Am. Dec. 543, it was held that the presumption was in favor of the authority of the president of the corporation to give a note or mortgage to secure it and to execute assignment.

DEFENDANT'S PLEA OF NON EST FACTUM ONLY PLACED BURDEN ON APPELLEE TO PROVE THAT J. L. MOYSE WAS PRES-

IDENT OF THE COMPANY AND THAT HE EXECUTED THE NOTES.
IN THE CORPORATE NAME.

George E. Lloyd & Co. v. Nelson Edwards Matthews et
al., 7 L. R. A. (N. S.) 376, and also 79 N. E. 172; Atwater
v. American Exch. Nat. Bank, 152 Ill. 605, 38 N. E. 1017;
Bank of Minneapolis v. Griffin, 168 Ill. 314, 48 N. E. 154;
Anderson v. South Chicago Brewing Co., 173 Ill. 213, 50
N. E. 665; Anderson Transfer Co. v. Fuller, 174 Ill. 221,
51 N. E. 251; Williams v. Harris, 198 Ill. 501, 64 N. E.
988.

For a full discussion of the presumption of authority
of the president, we call the court's attention to 2 Thomp-
son on Corporations, (2 Ed.), section 1462, pages 509,
510, 511, 512; Smith v. Smith, 62 Ill. 493; Union Mut. Life
Ins. Co. v. White, 106 Ill. 67, 48 N. E. 154, 51 N. E. 251, 50
N. E. 655; Milwaukee Trust Co. v. Van Valkenburg, 132
Wis. 638, 112 N. W. 1083; See 15 New. 167; Bliss v. Ka-
weah Canal etc. Co., 65 Cal. 502, 4 Pac. 507.

The president and secretary of a corporation are pre-
sumed to have authority to execute a promissory note in
the name of the corporation, and the holder of such note
will not be affected by the fact that such authority did
not exist, unless he is shown to have had notice thereof.
American Exchange National Bank v. Oregon Pottery
Co., 55 Fed. 265, citing American National Bank v. State
National Bank, 10 Wallace, 644, and other authorities.

In Dexter Sav. Bank v. Friend, 90 Fed. 703, and in
Jones v. Stoddard, 8 Idaho, 210, 69 Pac. 650, the presi-
dent of a corporation is presumed to be authorized to ex-
ecute the notes of the corporation.

In Iowa, in the absence of any showing to the contrary,
the president will be presumed to have authority to act
for the corporation in all matters within the ordinary
course of its business. White v. Elgin Creamery Co., 108
Iowa, 522, 79 N. W. 283.

In New York the president of a Water Company in
charge of the work of construction is presumed to have
power necessarily pertaining to the corporate business.

*Olcott* v. *Tioga R. Co.,* 27 N. Y. 456, Am. Dec. 298; 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544, note.

In New York, where the president was in the management of the corporation's business and all negotiations were had with him alone, he had power to bind the corporation, etc. *Nichols* v. *Scranton Steel Co.,* 137 N. Y. 471, 33 N. E. 561.

In New York, where the president was authorized to open an office, he could bind the corporation for furniture purchased by him. *Cross* v. *Anglo-American Bank Co.,* 79 Hum. (N. Y.) 424.

In the state of Washington the person who appears as the acting president may be treated as the president by persons dealing with him, and they are not required to look beyond such fact. 41 Wash. 480, 84 Pac. 22.

Elliott on Private Corporations, Third edition, section 495, approves the rule that the law presumes the acts of the officers to have been regularly and rightfully made, and that it is not necessary to produce evidence of such authority from the records of the corporations, and says that: "Under the operation of this principal, a deed or mortgage purporting to have been executed by a corporation, which is signed and executed in its behalf by its president and secretary, will be presumed to have been executed by its authority. This rule is of general application."

Cook, P. J., delivered the opinion of the court.

This is an appeal from the circuit court of Forrest county by the defendant below. The declaration declares upon two promissory notes, for three thousand, five hundred dollars each, payable to H. G. Lea, or bearer, and signed "Moyse Real Estate Company, by J. L. Moyse, President." It is alleged that the plaintiff paid value for the notes. Four pleas were filed by the defendant. The first plea is *non debet.* The second plea says that the promissory notes were "without consideration, being

merely given for accommodation, had no connection at all with the business of the Moyse Real Estate Company, which is a corporation, and were without authority either in law or in fact and were *ultra vires* of the corporation, which was not authorized to give the same, and had no power under its charter to give the same." The third plea is *non est factum.* The fourth plea is practically the same as the third, and both are sworn to. Plaintiff filed a replication, properly verified, denying the averments of the second, third, and fourth pleas, and files as an exhibit the charter of the corporation.

We do not doubt that the charter of the corporation confers ample power upon the corporation to execute promissory notes. We will concede, for the purposes of this decision, that the charter does not give the power to the company to make accommodation paper, and that the evidence shows the notes sued on were in fact accommodation and without consideration. The evidence also demonstrates that the plaintiff purchased the notes in the due course of trade, and that it had no information, or reason to suspect, that the notes were given for the accommodation of the payee. In this state of the record we believe that the plaintiff's right to recover is in no wise affected by the fact that the notes were without consideration. The power to execute promissory notes being conceded, we are unable to distinguish this case from a case wherein the maker of notes is a natural person.

The plaintiff assumed the burden and proved affirmatively that the notes were executed by the then president of the company, and the question for us to decide is whether the law will presume that the president had been given authority to sign same, in the absence of any evidence to the contrary. The trial court instructed the jury peremptorily to find for the plaintiff. The correctness of this instruction is challenged by the defendant. Stated concretely, the defendant, appellant here, earnestly and ably contends that no presumption can be indulged that the president of a corpora-

tion had any inherent power to bind the corporation in contracts of this nature, and that the mere proof that the president signed the name of the corporation to the notes in this case signifies nothing, and the plaintiff has failed to successfully carry the burden imposed upon him by the law.

Counsel on both sides have shown great industry and consummate ability in the presentation of their sides of this vexed question. They have exhausted the subject. It is quite apparent, after a careful and painstaking study of the authorities, that the decisions are in irreconcilable conflict. No decision of this court upon the precise question has been called to our attention, and we have not been able to find anything in our books which arrays our court on the one side or the other. Thompson on Corporations, vol. 2, sec. 1457 (2d Ed.), speaking of the conflict in the authorities, has this to say:

"The effect of these divergent views, on the one hand, is to relieve the complaining party of making proof of the president's authority, for the reason that, where he is in active conduct and management of the business, he must be presumed to have all the powers of any agent exercising like control and management, and to have authority to do what is usually and ordinarily done by such agents or managers. On the other hand, and under the other cases, the burden is cast upon the party seeking to charge the corporation upon a contract made by the president of proving his authority in some of the recognized modes, reducing the proposition to a question of fact rather than of law."

We think that the wiser and more practical rule is expressed by the supreme court of Illinois in *Lloyd & Co.* v. *Matthews,* 223 Ill. 477, 79 N. E. 172, 7 L. R. A. (N. S.) 376, 114 Am. St. Rep. 346, viz.:

"It is contended that, even though it be conceded that George E. Lloyd & Co., by E. C. Williams, its president, signed the guaranty, still, as a matter of law, the corporation cannot be held liable without proof of special

.authority from the corporation to its president to execute the contract of guaranty. A corporation can act only through its agents, and the president of a corporation, as the agent and corporate representative, has the power, in the ordinary course of business and in furtherance of the corporate interest, to execute contracts and to bind the company in so doing. He is, by virtue of his office, recognized as the business head of the company, and any contract pertaining to the corporate affairs, within the general powers of such officer, executed by the president on behalf of his corporation, will, in the absence of proof to the contrary, be presumed to have been done by authority of the corporation. *Atwater* v. *American Exch. Nat. Bank,* 152 Ill. 605, 38 N. E. 1017; *Bank of Minneapolis* v. *Griffin,* 168 Ill. 314, 48 N. E. 154; *Anderson* v. *South Chicago Brewing Co.,* 173 Ill. 313, 50 N. E. 655; *Anderson Transfer Co.* v. *Fuller,* 174 Ill. 221, 51 N. E. 251; *Williams* v. *Harris,* 198 Ill. 501, 64 N. E. 988. If the contract in question had been executed by some agent who ordinarily does not have the power to sign such instruments, and the execution had been put in issue by properly verified plea, as is the case here, then it would be necessary to go beyond the mere fact of the execution of the instrument and prove the authority of the agent to execute the same; but when the contract is properly executed for the corporation by its president, and it is such a contract as the corporation might lawfully make, the proof of the execution by the president is all that is required, in the absence of any evidence to the contrary showing that the contract was not made by the authority of the corporation.''

Nearly all of the big business and a large part of the small business is now conducted by corporations, and if it be the law that persons dealing with the president of a corporation about matters of business clearly within the powers of the corporation to transact must deal at arm's length, and demand that the president exhibit his credentials before entering into contracts with him, it

seems to us that not only the corporation, but also those dealing with corporations, will be seriously hampered. It is not our purpose to hold that a president of a corporation has the inherent power to bind the corporation, but we do hold that the fact that the president of a corporation has executed a contract for his corporation is *prima facie* evidence that the president had the authority to bind the corporation.

If it be true that the president did not possess the authirity assumed by him in the present case, the proof of his lack of authority was in the possession of the corporation, and there would have been no difficulty in the way of its production. On the other hand, it might be very difficult and expensive for the plaintiff to have secured the evidence to show his authority. This corporation was domiciled in New York City, and while there are means whereby the plaintiff might have secured affirmative proof, yet it is conceivable that the unwilling corporation might see fit to throw many obstacles in the way. Presidents of corporations generally exercise the powers of a general agent, usually by the tacit consent of the corporation and the public rarely stops to inquire about his authority. *National Bank* v. *Vigo Bank*, 141 Ind. 352, 40 N. E. 799, 50 Am. St. Rep. 330; *Patterson* v. *Robinson*, 116 N. Y. 193, 22 N. E. 372. The acts done by the president pertaining to the business of the corporation, not clearly foreign to his powers, will, in the absence of proof to the contrary, be presumed to have been authorized by the corporation. This, we think, is a salutary rule, and imposes no hardships upon either party to the contract. The corporation selects its president, and the ordinary business man, generally speaking, assumes that the man made president is the head and front of the corporation. If it be true that the president of any particular corporation is a mere figurehead, with no powers or duties, except as a presiding officer of the board of directors, this fact can be readily established by the corporation.

*Affirmed.*