### OGDEN *et al. v.* AMITE COUNTY BANK *et al.**

(Division A.   June 1, 1925.)

[104 So. 289.   No. 24645.]

1. EQUITY.  *Bill to collect debt, reform security, and set aside fraudulent conveyances not multifarious.*
   Bill, the general purpose of which is collection of debt due by principal defendant, first, by reformation of description in deed of trust and sale thereunder, and then any deficiency by setting aside as fraudulent conveyances to the other defendants, and the subjecting of the property covered thereby to payment of deficiency, *held* not multifarious.

2. FRAUDULENT CONVEYANCES.  *Bill to set aside maintainable by secured creditor.*
   A secured creditor may for purpose of satisfying deficiency maintain suit to set aside fraudulent conveyances, especially where by fraudulent representations debtor secured release from lien of most valuable part of security.

3. FRAUDULENT CONVEYANCES.  *Averment of insolvency held sufficient.*
   Bill to set aside fraudulent conveyances, alleging that debtor had fraudulently conveyed all his property of every kind and character, and had no property subject to execution, sufficiently avers insolvency for maintenance of suit.

*Headnotes 1. Equity, 21 C. J., section 435; See under (1) 10 R. C. L., pp. 430-432; 2 R. C. L. Supp., p. 1014; 4 R. C. L. Supp. 666, 5 R. C. L. Supp. 555; 2. Fraudulent Conveyances, 27 C. J., section 119; 3. Fraudulent Conveyances, 27 C. J., section 676.

APPEAL from chancery court of Wilkinson county.

HON. R. W. CUTRER, Chancellor.

Suit by the Amite County Bank against R. J. Ogden and others. From a decree for complainants, certain defendants appeal. Affirmed and remanded.

*D. C. Bramlette,* for appellants.

1. Multifariousness. We respectfully submit that although the court below overruled the demurrers setting out the ground of multifariousness among others, still, when the time came to render a final decree, an attempt was made to divide up this case to such an extent that the court below by its own act demonstrates clearly the existence of multifariousness, which we assert with the greatest respect; and this multifariousness was fatal to the bill of complaint from the inception of this suit, and the demurrers of appellants should have been sustained. In other words, the court below held that the deed of trust be reformed, descriptions corrected, and the specific property that was given as security for this debt be sold to satisfy it; whether this specific property will yield three hundred, three thousand, or three hundred thousand dollars, no human being can tell; the court below evidently realized this from the final decree and attempted to remedy this situation apparently by "retaining jurisdiction" of this cause which, of course, is an impossible procedure and only serves to accentuate the fatal defects of the bill of complaint. But regardless of this situation, the bank at one and the same time filed a bill of complaint to correct and reform the deed of trust, have specific property conveyed as security sold thereunder, and conveyances of entire different property cancelled as fraudulent, and in addition for a personal judgment against Mr. Ogden. Such a bill of complaint is clearly multifarious as held by this court in *Carter v. Kimbrough,* 122 Miss. 543. Each respective grantee defendant is connected only with his respective deed and the

property therein conveyed and has absolutely no community of interest with any other grantee defendant nor any interest in or connection with the suit to reform the deed of trust, sale thereunder, *et cetra,* or claim for personal judgment against Mr. Ogden.

In *D'arcey* v. *Lake,* 46 Miss. 109, it is said: ''By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them. When tested by this rule, the bill in this case will be found to be multifarious.'' See, also, *Roberts* v. *Starke,* 47 Miss. 257; *Thoms* v. *Thoms,* 45 Miss. 263; *Banking Co.* v. *Humphries,* 64 Miss. 258, 1 So. 232; *Hardie* v. *Bulger,* 66 Miss. 577, 6 So. 186; *McNeill* v. *Burton,* 1 How. 510; *Boyd* v. *Swing,* 38 Miss. 182; *Selleck* v. *Compress Co.,* 72 Miss. 1024, 17 So. 603; *McGowan* v. *McGowan,* 48 Miss. 553; *Jones* v. *Foster,* 50 Miss. 47; *Guess* v. *Strahan,* 106 Miss. 1, 63 So. 313.

See the very recent case of *Reese et al.* v. *Salmon,* 99 So. 382. The bill of complaint in the case before the court (original and amended), was multifarious and the demurrers should have been sustained. Every debtor is deemed to hold his property in trust for his creditors, but, of course, not for a creditor who is secured. Such property as a debtor owns aside from that conveyed as security he may do with as he pleases. This is a fair and just principle which is based on the theory that when a creditor exacts and is given security there is not the legal or moral obligation that exists between a debtor and an unsecured creditor.

The bill of complaint shows that the bank was amply secured to its satisfaction when the loan was made. The bill of complaint shows that the bank was satisfied with the renewal note and security in 1921 when it collected one thousand forty-seven dollars and ninety cents and could have just as easily collected a third more. Holding that only a person who gives no specific security for his debt holds his property in trust for his creditors, this court, in *Ames* v. *Dorroh,* 76 Miss. 196, lays down

the correct principle. It would seem that the best authorities are in accord with our court. 27 C. J. 498, 3-b.

Before the bank has any standing in court in its attempt to cancel deeds, it must show that the debtor has conveyed in these deeds property that otherwise might have been subjected to the satisfaction of its debt, and this debt being secured by entirely different property, that the bank is also asking the court to appoint a commissioner to sell, the bank is in no position to ask the cancellation of said deeds. 12 R. C. L. 491.

Many other authorities are in accord with the position taken by our court in the *Ames case, supra,* among others being: *Campbell* v. *Jones,* 52 Ark. 493, 12 S. W. 1016, 6 L. R. A. 783; *Brown* v. *Campbell,* 100 Cal. 635, 35 Pac. 433, 38 A. S. R. 314; *Ziska* v. *Ziska,* 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1; *Barron* v. *Williams,* 58 S. C. 280, 36 S. E. 561, 79 A. S. R. 840; *Albertoli* v. *Branham,* 80 Cal. 631, 22 Pac. 404, 13 A. S. R. 200; *Brumbaugh* v. *Richcreek,* 127 Ind. 240, 26 N. E. 664, 22 A. S. R. 649; *J. I. Kelly Co.* v. *Pollock,* 57 Fla. 459, 49 So. 934, 131 A. S. R. 1101; *Kenney* v. *Dow,* 10 Mart. O. S. (La.) 577, 13 Am. Dec. 342; *Baudin* v. *Roliff,* 1 Mart. N. S. (La.) 165, 14 Am. Dec. 181; *Guidry* v. *Grivot,* 2 Mart. N. S. (La.) 13, 14 Am. Dec. 193; *Honey v. Henrqiues,* 13 Wend. (N. Y.) 240, 27 Am. Dec. 204; *Eigleberger* v. *Kibler,* 1 Hill. Eq. (S. C.) 113, 26 Am. Dec. 192; *Barron* v. *Williams,* 58 S. C. 36 S. E. 561, 79 A. S. R. 840; *Wagner* v. *Law,* 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 A. S. R. 56, 15 L. R. A. 784.

The demurrers should have been sustained on the ground that the debt held by the bank is a secured debt. The bank does not allege that Ogden is insolvent and in a case of this character this court has indicated the necessity of this allegation in *Carter v. Kimbrough,* 122 Miss. 543-556; 27 C. J. 770; *Miles* v. *Richards,* 1 Miss. 477 (Walker), 12 Am. Dec. 584.

Fraud is not to be inferred from mere fact of relationship of parties. *Hinde* v. *Longworth,* 11 Wheat, 199, 6

U. S. (L. Ed.) 454; *Davis v. Schwartz*, 155 U. S. 631, 15 S. Ct. 237, 39 U. S. (L. Ed.) 289; *McKillip* v. *Farmers State Bank*, 29 N. D. 541, 151 N. W. 287. Ann Cas. 1917 C, 993.

This entire proceeding is premature even should appellees or the court below be correct in their view of the law otherwise and the demurrers should have been sustained.

*Lowrey & McLain* and *H. C. Leake*, for appellees.

1. *The Chancellor did not err in taking and retaining jurisdiction of the subject-matter and parties.*

(a) He did not err in taking jurisdiction. It is a well-settled doctrine of equity jurisprudence that a court of equity has jurisdiction to reform instruments, where there have been unintentional mistakes made in drafting them. "Correction of mistakes in deeds or other writings, is one of the acknowledged heads of equity jurisdiction." *Harrington* v. *Harrington*, 2 H. 701; *Simmons* v. *North*, 3 S. & M. 67; *Peques* v. *Mosby*, 7 S. & M. 340; *Lauderdale* v. *Halleck*, 7 S. & M. 622; *Plant* v. *Powell*, 23 So. 399. In *Brown* v. *Wesson*, 114 Miss. 216, this court held: "Jurisdiction in cases of mistakes is as broad and extensive as its jurisdiction in cases of fraud." The rule is universal and requires no further citation of authority.

(b) He did not err in retaining jurisdiction. We will content ourselves with citing one authority, that of the modern case of *Baker* v. *Nichols*, 111 Miss. 673.

(c) Equity has jurisdiction to foreclose a mortgage. "Where the chancery court has taken jurisdiction of an action because of an equitable feature charged in the bill, it should, although such feature afterwards under the evidence, be found unmaintainable, adjudicate the legal rights of the parties." Again, "A power of sale *in pais* does not prevent a resort to foreclosure in equity, and the latter is commended." *Thompson* v. *Houze*, 48 Miss. 444; *Dibbrell v. Carlisle*, Ib. 691; *McAllister* v. *Plant*, 54

Miss. 106; *McDonald* v. *Vinson,* 56 Miss. 497; *Green* v. *Maston,* 56 Miss. 748.

(d)   Courts of equity have jurisdiction by creditors to cancel fraudulent . conveyances.   Section 553, Code of 1906 (section 313, Hemingway's Code).   "A voluntary deed was not good against a creditor, whose debt was in existence at the time the deed was made." *Swayze* v. *McCrossin,* 13 . S. & M. 317.   "A voluntary conveyance by an insolvent is void against his existing creditors, and the property may be subjected to their judgments, though subsequently obtained." *Davis* v. *Lumpkin,* 67 Miss. 506.   See, also, *Grenada Bank* v. *Waring,* 99 So. 681.

If the decree of the Chancellor is affirmed by this court, and he is permitted to deal with the situation as it develops with these parties, according to justice and fair dealing, then no harm can come to any, for if the land conveyed to his wife and children should have to be sold in order to bring the debt of the bank, the wife and children of appellant, Ogden, would have no right to come- plaint, for they would lose nothing by such a contingency.   They have "reaped where they have not sown," and if the Davidson place and some or all of the fraudulently conveyed property should have to be sold to satisfy the appellee bank's deed of trust indebtedness no harm would come to the wife and children, for they did not own it, or have any claim on the property, if indeed they know it even now, until Mr. Ogden by his fraudulent schemes placed it in their names to defeat the debt due the bank.

But opposing counsel says that the fact the bank is a secured creditor shuts their mouth, so far as any other property of Ogden is concerned until the property covered by the deed of trust is sold.   We submit that under the peculiar state of facts in this record, such a contention cannot be true, for it is proven without question, as a fact, and believed by the Chancellor, that his loan by the bank was made as much to Mr. Ogden as a man, and

even, more so, than it was on the strength of the security offered and given. Then as a matter of law we now insist in addition, that even though we are secured, we are not precluded from proceeding against the other property of Mr. Ogden, even now, especially as the security is not worth the debt, or any way near the amount of it. The fact that the bank's right to pursue other property of Mr. Ogden than that contained in its deed of trust, is contingent upon what the property covered by the deed of trust might bring at the sale, will not prevent the bank from subjecting other property of Mr. Ogden to its indebtedness. 3 C. J., Sec. 113, page 473; C. J., sec. 119-E, page 475. "According to the weight of authority a creditor who has taken a mortgage as security for his debt can attack a prior fraudulent transfer or mortgage made by his mortgagor."

We insist that the Chancellor did not err in holding the bill not multifarious. We begin by stating that the general purpose of the bill is to make collection of an indebtedness due the bank by Mr. Ogden. Every allegation of the amended bill of complaint, and all of the evidence in the record is contributory to and connected with this one general purpose of the bill of complaint, and the right of action as we state it. Every party that is sued in the cause has some right, or is in some degree related to this one main purpose of the bill. All parties have some right or some interest that is thus related. Each element of the cause is dependable upon the other, and all run back to, and are centered in Mr. Ogden's acts. Section 598, Code of 1906 (section 358, Hemingway's Code); 10 R. C. L. 430, sec. 192.

We submit that when tested by the foregoing the bill in this case is not multifarious. It may be asked what interest the wife and children of Mr. Ogden have in the correction of the deed of trust, or in the foreclosure of the deed of trust, and we answer by stating that it all forms one story. That beginning with the execution of the mortgage and the acts of Mr. Ogden, thereafter, that

every step in this litigation forms one story, and each step is related to the preceding step by the tracks that Mr. Ogden has made. The whole suit is one connected story of Mr. Ogden's acts of fraud and misdeeds. We submit that when the record is read in the light of the foregoing test that this court will not hold the bill multifarious, as each step in the story depends on the one that immediately goes before it. When we turn to our own state, we find the rule stated in *Delafield et al.* v. *Anderson,* 7 S. & M. 630. See *Butler, Administrator, etc., et al.,* v. *Spann, et al.,* 27 Miss. 235; *McGowan et al.* v. *McGowen et al.,* 48 Miss. 553. We further submit that the bill of complaint is not multifarious because it prevents a multiplicity of suits. 10 R. C. L. 432, sec. 194; 10 R. C. L. 429, sec. 191; *Gaines* v. *Chew,* 2 Howard, 602. Opposing counsel does not attempt to defend this cause on its merits, but relies upon super-refined technicalities. His demurrer is longer than his answers. Courts of equity do not look with favor on technical refinements, but rather to the rendering of substantial justice and doing right between parties. The Chancellor has heard this cause on its merits, and has held that as a fact fraud was perpetrated, and perpetrated by Mr. Ogden himself, and he has had his day in court, and took the stand as a witness in his own behalf, and if the court will read his testimony in the record it will see that his own story of his dealings with the bank and his trails and tracks made in trying to defeat it in making collection of its debt, is an almost give-away of his own wrongdoing and fraudulent schemes.

Argued orally by *D. C. Bramlete,* for appellants, and *J. T. Lowrey,* for appellees.

COOK, J., delivered the opinion of the court.

The Amite County Bank, appellee, filed its original and amended bill of complaint in the chancery court of

Wilkinson county against R. J. Ogden and others, appellants herein. The amended bill of complaint averred, in substance, that, on the 12th day of April, 1920, the appellant, R. J. Ogden, being indebted to the said bank in the sum of three thousand five hundred forty-seven dollars and eighty cents, evidenced by a promissory note for said sum, payable one year after date, executed a deed of trust in favor of said bank to secure the payment of this indebtedness; that said deed of trust purported to cover three hundred acres of land owned by the appellant, R. J. Ogden, but that the land descriptions in said deed of trust were erroneous in several respects therein particularly set out; that the officers of the bank who made the loan and took the security were not familiar with appellant's land or the numbers thereof; that they relied entirely upon the appellant, Ogden, to furnish them the correct data and descriptions for the preparation of the deed of trust; that the said appellant furnished to the officers of the bank the descriptions of land that were actually written into the deed of trust; that the descriptions so furnished were, in part, erroneous and did not cover the lands which the appellant had offered as security for the loan, but described land that the appellant did not own.

The bill further charged that afterwards, by false and fraudulent representations, the appellant R. J. Ogden induced the bank to release from the operation of this deed of trust the most valuable tract of land covered thereby; that he represented that he had contracted to sell this tract of land, and that, if the same was released from this deed of trust, it would be sold and the proceeds immediately deposited in the bank to be credited on the note secured by the deed of trust; that the appellee bank having great confidence in the business integrity of the appellant, agreed to release and did release the said tract of land, but the appellant did not sell the land and apply the proceeds in reduction of his indebtedness, but, on the contrary, attempted to dispose of the same by a fraudulent

voluntary conveyance to his son, J. Carrol Ogden, one of the appellants herein.

The bill further charged that the appellant R. J. Ogden failed and refused to pay the taxes on the land conveyed under the deed of trust, and that the bank was forced to pay these taxes in order to protect its security; that on the day after the note matured the appellant R. J. Ogden filed for record in the office of the chancery clerk conveyances by which he undertook to convey to his wife his homestead and all the personal property owned by him of every kind and character, and to convey to his adult son, J. Carrol Ogden, and his three minor children, all the balance of the real estate owned by him; that all of these conveyances were without consideration, fictitious, and fraudulent; that they were made for the purpose of placing all his property beyond the reach of his creditors, and particularly for the purpose of hindering, delaying, and preventing the appellee bank from collecting its debt; that the said R. J. Ogden owned no other property whatever which could be subjected to execution or other process in the event the property described in the deed of trust failed to be sufficient to satisfy the indebtedness to the said bank; that, since the alleged fraudulent conveyances to his wife and children, the said R. J. Ogden had been making efforts to sell said land in a further fraudulent attempt to place it beyond the reach of his creditors.

The bill further averred that the lands covered by the deed of trust were wholly insufficient to pay the indebtedness to the bank; that on account of satisfactory business relations with the said R. J. Ogden, extending over a period of years, the officials of said bank accepted without question or investigation the security offered by him, relying more upon the integrity and financial worth of the borrower than upon the security offered, and charges that all the acts of the said R. J. Ogden in borrowing this money, executing a deed of trust on lands which he did not own, securing a release of the most valuable part of

the security, and the execution of these voluntary conveyances to his wife and children, were a part of a scheme to cheat and defraud the bank, and that these alleged voluntary conveyances to his wife and children were fraudulent and void and should be canceled.

The prayer of the bill was for proper process for the appellant R. J. Ogden and his wife and children, to whom these conveyances had been made, and that the deed of trust be reformed and corrected so as to correctly describe the lands intended to be conveyed thereby; that a lien be impressed upon the land for all taxes paid by the bank in protecting its security; that a commissioner be appointed to sell the land covered by the deed of trust as corrected; that the said conveyances to the wife and children of R. J. Ogden be declared fraudulent, except as to the exempt property, and that the same be canceled and set aside, and that the land described therein be subjected to the payment of any balance due upon complainant's debt after crediting thereon the proceeds of the sale of land under the deed of trust, and that personal decree be entered fixing the amount of the indebtedness to the bank, including principal, interest, taxes, and attorney's fees.

The defendants filed an answer, denying the fraud charged, and also filed special and general demurrers to the bill upon the grounds, among others, that there was no equity on the face of the bill, and that the bill of complaint is multifarious, and that at the time of the execution of the alleged fraudulent conveyances the debt of the defendant R. J. Ogden to the complainant bank was a secured debt. These demurrers were overruled, and the defendants answered the bill of complaint. After a full hearing on the bill, answer, and proof, the chancellor entered a decree, adjudging that the allegations of the bill of complaint as to fraud and fraudulent actions of the defendant R. J. Ogden were fully sustained by the evidence, and ordered that the descriptions of the lands embraced in the deed of trust be reformed and corrected;

granted a personal decree against R. J. Ogden for three
thousand four hundred eighty-one dollars and twenty-
one cents, the amount found to be due the bank by
Ogden; ordered the lands covered by the deed of trust to
be sold by a commissioner appointed for that purpose;
and ordered that the jurisdiction of the court be retained
on all parties to the suit and upon all property covered
and described by the amended bill of complaint, and not
adjudicated in the decree, for further determination and
adjudication by that court as the justice and equity of
the parties may require; and granting the defendants an
appeal to this court without *supersedeas*.

Upon appeal the appellants seek a reversal solely up-
on the ground that the demurrer to the bill of complaint
should have been sustained, the contention being first,
that the bill of complaint is multifarious; second, that a
creditor who has taken security for his debt cannot main-
tain a bill to set aside a fraudulent conveyance, although
the security may be wholly inadequate to satisfy the in-
debtedness; and, third, that the bill of complaint does not
charge that the debtor was insolvent.

We do not think the contention that the bill is multi-
farious is maintainable. The several issues covered by
the bill arose out of the same transactions which it is
charged formed a connected series of acts, all intended to
defraud the complainant. The general purpose of the
bill is the collection of the indebtedness due the complain-
ant, and, while the bill seeks the reformation of the deed
of trust and the sale of the land conveyed thereby, this
was necessary to determine the extent of the deficiency, if
any, in this security, to the payment of which the prop-
erty conveyed to the other defendants might be subjected
in the event the allegations of fraud were sustained. The
several defendants claim different parcels of land under
the separate conveyances which the bill seeks to cancel,
but the gravamen of fraud in each conveyance is the
same and equally applies to all of them.

Section 598, Code of 1906 (section 358, Hemingway's Code), provides that the uniting in one bill of several distinct and unconnected matters of equity against the same defendants shall not be an objection to the bill. In 10 R. C. L., p. 430, the doctrine is announced that:

"A bill is not necessarily rendered multifarious by reason of the fact that there may be united in it several causes of action. If all the different causes of action united in the bill grow out of the same transaction, and if all of the defendants are interested in the same rights, and the relief against each is of the same general character, the bill may be maintained. No bill is multifarious that presents a common point of litigation, the decision of which will affect the whole subject-matter, and will settle the rights of all the parties to the suit; and it is not indispensable that all the parties should have an interest in all the matters contained in the suit, but it is sufficient if each party has an interest in some material matters involved in the suit, and they are connected with the others."

Again, in 10 R. C. L., p. 432, it is said: "Fraud is a head under which the courts do and may well permit some laxity of practice in regard to the joining of separate causes of action. Accordingly, a bill may be filed against several persons relative to matters of the same nature forming a connected series of acts, all intended to defraud and injure the plaintiffs and in which all the defendants were more or less concerned, though not jointly in each act nor to the same degree. Where fraud permeates the whole transaction, it imparts to the suit a singleness of object and purpose. Great liberality as to the joining of different claims in one bill is likewise indulged in creditors' suits."

In the case of *Delafield* v. *Anderson*, 7 Smedes & M. 630, it was held that: "A bill to set aside a sale of land, under execution, making the several purchasers at the sale, though they bought different and distinct interests, and the plaintiffs in the execution, under which the sale

was made, all defendants, is not multifarious, on account of an improper joinder of parties.''

In Waller v. Shannon, 53 Miss. 500, in overruling a demurrer to the bill, the court said: ''It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others.''

Again, in the case of *Butler, Administrator, v. Spann,* 27 Miss. 235, it was held: ''The rule of multifariousness is held not to apply where the parties have a common interest touching the matter of the bill, although they claim under distinct titles and have independent interests; and it is the same where several matters are of the same nature as to the defendants, and of the same general right in the complainant.

''Where several plaintiffs claim under one title, and bring their suit against various defendants, who claim the same estate under distinct and separate sales of different parcels thereof to them separately, where the gravamen of fraud or wrong in the sales is the same and equally applies to all, the objection of multifariousness will not apply.''

It has been repeatedly held by this court that it is impossible to lay down any universal rule as to what constitutes multifariousness and that the application of the rule depends upon the particular facts involved, and we think the matters charged in this bill of complaint are so connected as to constitute one series of transactions, all tending to establish the charge of fraud, and that the bill is not multifarious.

The next contention of the appellants is that the bill cannot be maintained because it shows that the creditor had taken security for its payment. A creditor who has taken some specific security for his debt is not by reason thereof cut off from his right to proceed against the property of the debtor for any deficiency, in the event the security is insufficient to discharge the debt. He has the

right to have the deficiency or balance satisfied out of any property of the debtor which is subject to execution, and, where such property is fraudulently conveyed for the specific purpose of hindering, delaying, and defeating the collection of such deficiency, the creditor can maintain a bill to set aside such fraudulent conveyance. Especially would this be true where the bill charges, as here, that by false and fraudulent representations the debtor secured a release from the lien of the most valuable part of the security, thereby practically destroying the security. In Bigelow on Fraudulent Conveyances (2d Ed.) p. 188, in discussing the right of lien creditors to maintain a bill to vacate fraudulent conveyances, it is said that:

"If, however, the property covered by the lien is not sufficient for the debt, then the lien creditor, in respect of the deficiency, clearly falls within the description of creditors and others."

We think this announces the correct rule, and that, upon this point, the action of the court below in overruling the demurrer was correct.

There is no merit in the contention that the bill of complaint does not allege that the defendant R. J. Ogden is insolvent. The bill alleges that he had fraudulently conveyed all the real and personal property, of every kind and character, owned by him, and that he had no property whatever subject to execution, which is a sufficient averment of insolvency to maintain the bill.

The decree of the court below will therefore be affirmed and the cause remanded.

*Affirmed and remanded.*