## McDowell *et al. v.* Federal Land Bank of New Orleans *et al.*

(Division A.   March 24, 1930.   Suggestion of Error Overruled May 12, 1930.)

[127 So. 288.   No. 28486.]

Earle N. Floyd, of Jackson, and **James R. McDowell** and **W. P. Metcalf**, both of Memphis, Tenn., for appellants.

Wells, Jones, Wells & Lipscomb, of Jackson, for appellees.

**McGowen, J.,** delivered the opinion of the court.

James R. McDowell, William P. Metcalf, and Earle N. Floyd, as receivers for the Mississippi Life Insurance

Company, filed their bill in the chancery court of Sunflower county against the Federal Land Bank and J. E. and Lela Walker. The appellee, the Federal Land Bank, interposed its demurrer to the bill of complaint, which was sustained by the court. The decree rendered, the appellants, receivers, and complainants herein, having declined to amend their bill further, dismissed the bill as to the bank but retained it as to the other appellees, the Walkers, who were required to make answer; and from this decree an appeal is prosecuted here.

The bill alleged that the appellants were appointed receivers of the Mississippi Life Insurance Company, a corporation organized and doing business under the laws of the state of Mississippi; that on the 18th day of July, 1922, J. E. Walker was president of the said life insurance company; that the said company was engaged in the business of investing such funds as accrued in its treasury, and that, in pursuance thereof, on the 18th day of July, 1922, loaned to L. C. and Lizzie Williams the sum of three thousand three hundred six dollars and sixty-six cents, and duly evidenced such loan by accepting the promissory note of the said parties payable on the 20th day of July, 1927, with interest, etc., secured by a first deed of trust which was filed for record on July 20, 1922, and recorded in the office of the chancery clerk of Sunflower county; that said trust deed constituted a first lien on said property, which, under the laws of Mississippi, was a prerequisite to the loaning of its funds on real estate.

The bill further alleged that Walker as president of the said insurance company, on November 20, 1922, executed in favor of the Federal Land Bank a waiver of the first lien hereinabove referred to, to secure an indebtedness of Williams and wife in the sum of two thousand five hundred dollars, and took a trust deed on such lands to secure the payment thereof, and promptly had same recorded; that Walker in the execution of said waiver did

not refer the matter to, nor obtain the approval of, the directors of the insurance company, nor make any record pertaining to the said act; that he concealed with a fraudulent and unlawful purpose the execution of the waiver, and thereby subjected the security for the loan made by the said insurance company to Williams and wife to a prior incumbrance in favor of the Federal Land Bank, impairing the security held by the company to the extent of two thousand five hundred dollars.

It was further alleged that Walker, the president of said insurance company, was also at the same time president of the Delta Penny Savings Bank, which savings bank had, prior to this transaction, loaned to Williams and wife a large sum of money, secured by another and third deed of trust executed subsequent to the deed of trust to the insurance company; that the waiver was executed by Walker to enable Williams and wife to secure funds with which to repay the savings bank of which he was president, and that they did so secure said funds; that all of such acts and conduct by Walker was in violation of the trust and confidence imposed in him as president of said insurance company, and in violation of the laws of the state, which require the investment of such insurance funds only in the first lien securities, and in further violation of the law prohibiting such waiver as an ultra vires act; that all such unlawful acts and conduct of Walker constituted a fraud on the said insurance company, of which he was president, and were known to the Federal Land Bank, or could have been known by it by the exercise of reasonable diligence in such cases required. It is also alleged that the funds obtained from the Federal Land Bank were by Williams paid to the Delta Penny Savings Bank as a credit on an indebtedness then owing by them.

The receivers, complainants and appellants here, alleged that the deed of trust executed by Williams and wife to the insurance company was foreclosed on April

30, 1928, and that they, as the highest bidders, purchased the property for one thousand dollars, from which sum, after paying trustee's fees, notary fees, and advertising, there remained a balance of nine hundred fifty dollars and sixty-five cents, which was applied on the indebtedness owing by Williams and wife to the insurance company.

The bill also alleges that, the waiver being an act ultra vires, the deed of trust taken by the Federal Land Bank was thereby rendered subordinate to their claim as receivers, and that such deed was a cloud upon their title because it appeared to be a first lien on such land; also, further, that J. E. Walker, in the execution of such waiver, committed a tortious act which rendered him liable in pecuniary damages to the said insurance company, and its legal assignees, the receivers herein, and that he is therefore liable for the sum of two thousand five hundred dollars, with interest and costs.

The bill further alleges that Walker well knew that his fraudulent conduct in this behalf would at some future date be disclosed and legal redress would be demanded of him, and, in order to defeat the claim of receivers, conveyed to his wife, Lela Walker, by deed dated July 1, 1923, certain property belonging to him, for which, upon information and belief of the receivers, there was no real or valuable consideration, but that the said conveyance was a voluntary one and made with the purpose and intention of defrauding his creditors, and that same should be canceled and subjected to the payment of this debt.

The prayer of the bill was that the court grant a decree canceling the waiver in favor of the Federal Land Bank, and also decree that the title of the receivers, by virtue of the foreclosure sale above mentioned, constituted a full, free, and unencumbered title in fee simple to the lands conveyed under said foreclosure sale. The bill further prays that an attachment be issued against the lands con-

veyed by Walker to his wife, and levied thereon, as the Walkers were alleged to be nonresidents; and, as an alternative relief, that in the event the above prayer for cancellation of said waiver of the Federal Land Bank be not granted, that a personal decree be granted to complainants against the said J. E. Walker for the sum of two thousand five hundred dollars, with interest and costs, that the conveyance made by the said Walker to his wife be canceled, and the land be subjected to the payment of said personal judgment.

The waiver executed by Walker recited "a consideration of five dollars cash in hand paid, and for the purpose of inducing the Federal Land Bank to close a loan with L. C. Williams, the undersigned Mississippi Life Insurance Company, a corporation, by its president, the beneficiary in and the owner and holder of the indebtedness described in and secured by its deed of trust, executed on July 18, 1922 by L. C. Williams and wife, Lizzie Williams, for the benefit of the Mississippi Life Insurance Company, recorded . . . does hereby waive and declare inferior the lien in its said deed of trust in favor of the Federal Land Bank of New Orleans, and does hereby subordinate and make junior the lien in its deed of trust in favor of the Federal Land Bank, etc."

The waiver was complete; no point is made on it; it was signed by Walker, as president of the Mississippi Life Insurance Company, and acknowledged by him as president of such company, and filed for record. It will be noted that no limitation of the power or authority of the president to execute a waiver is alleged in the bill, except such as may be found in the statute applicable thereto. It is not charged that either the charter or by-laws placed any restriction on the authority of Walker as president of the company, in fact none of the by-laws of the charter are made exhibits, nor anything pleaded as to Walker's want of authority, save the reference to the statutes of Mississippi.

The demurrer to the bill denied that there was equity on the face of the bill; asserted that the bill was multifarious in that it sought to combine in one action separate causes of action against persons not jointly interested; that the bill showed on its face that the defendants are and were bona-fide incumbrancers for value without notice of the claim of the complainants, the receivers. It further asserted that the subordination of the lien held by the insurance company was made by its president and chief executive officer, in due form as required by law, and that the complainants were estopped as against these defendants to challenge the sufficiency of the subordination. The demurrer further asserted that the president of the corporation represented the corporation, and his acts in its behalf were binding upon it.

The bill is probably multifarious under the authority of the cases of Carter v. Kimbrough, 122 Miss. 543, 84 So. 251; Ogden v. Amite County Bank, 139 Miss. 875, 104 So. 289, and the authorities in these cases cited; but the demurrer goes to the gist of the bill, and we shall not rest the decision upon the question of the multifariousness of the bill.

The statute upon which appellants rely for their contention that the bank was notified of the ultra vires act in executing the waiver, and of Walker's want of authority, is found in section 5841, Hemingway's Code 1927, the full statute applicable being found in section 5047, Hemingway's Code 1917, that part of which is applicable being:

Relative to the capital stock of an insurance company ". . . and the same is held as the capital of the company, invested, or to be invested, as herein required, such capital shall be invested only as follows:

"First. In first mortgages on real estate in this state."

And then as to the investment of its accumulations, there is found the following:

"A company organized under the laws of this state may invest its accumulations as follows, and may sell, change, or reinvest the same, or any part thereof at pleasure.·

"1. . . .

"2. In bonds and mortgages upon unincumbered real estate, the market value of which real estate is at least double the amount loaned thereon, at the date of investment."

Appellants' argument seems to be that this statute was notice to the appellee that neither the insurance company nor its president is authorized to execute a waiver by the terms of which a first-mortgage security would become subordinate and no longer in that class of security. In the absence of this statute, the act of the president in executing the waiver here in controversy would be the act of the insurance company by virtue of his position, and the same would be binding upon the company. The Federal Land Bank had the right to presume, and this court would presume for aught that is alleged in the bill, that the knowledge and action of the president of such company was the knowledge and action of the corporation which he represented in the transaction. See Moyse Real Estate Co. v. First National Bank of Commerce, 110 Miss. 620, 79 So. 821.

However, counsel for appellants insist that the act of the president in subordinating the first-lien security held by the insurance company, in the execution of the waiver, was an ultra vires act, and, therefore, not binding upon the corporation; and, of course, if not binding on the corporation, then not binding upon its receivers. If we concede for the purposes of this decision that the Federal Land Bank would be charged with notice, upon the execution of this waiver, that the insurance company would no longer have the security required by law, cited supra, and if we concede further that this transaction constituted an ultra vires act, which we do not decide as it is

unnecessary, still appellants may not avail themselves thereof. Neither the receivers, nor the corporation, may avail of the ultra vires act here complained of. See People's Bank v. Lamar County Bank, 107 Miss. 852, 66 So. 219, 67 So. 961. In this case, this court, on suggestion of error, held that the statute prohibiting the acquisition of stock by one of two competing banks in the other is an ultra vires act of which only the state can complain. We are not able to differentiate the pronouncement of the court in that case from the statute here invoked—in the one case, a corporation undertook to plead an ultra vires act in the purchase of corporate stock prohibited by law, and, in this case, the corporation, after taking that kind of security required by law, changed the value and form of such to that which was not authorized under the statute—the same kind and class of ultra vires act, if the action here complained of be considered as a violation of the statute here invoked. A corporation which is by its charter and by statute authorized to invest its capital stock, by loaning it out on real estate or first-class securities, would not be expected always, though complying with the letter of the law in its original investment, to make loans which would prove to be sound and collectible. It could not be gainsaid that the insurance company could have canceled its deed of trust held upon the property of Williams, and would be bound by such cancellation in the absence of any other allegation, even though the president of the corporation might thereafter fraudulently misappropriate the money received in virtue of the cancellation, or embezzle that fund.

The act of the president in this case being the act of the insurance corporation, it may not now set up its own ultra vires act as against the party whom it procured to act, and part with its money on the faith of that act, which was the inducing cause of the loan by the Federal Land Bank to Williams, and which was ostensibly, and on its face, in the interest of the corporation, or at least un-

der the control of the president, presumably the executive head and managing agent of its corporation.

Affirmed.